OPINION

No. 04-04-00758-CR

Raul RANGEL,
Appellant

v.

The STATE of Texas,
Appellee

From the 2nd 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 04-0182-CR
Honorable Sam Robertson, Judge Presiding
 
Opinion by:    Karen Angelini, Justice
 
Sitting:            Alma L. López, Chief Justice
Karen Angelini, Justice
Sandee Bryan Marion, Justice
 
Delivered and Filed:   August 3, 2005

AFFIRMED IN PART, REVERSED AND RENDERED IN PART
            Raul Rangel was convicted by a jury on two counts: Count I for burglary of a habitation and
Count II for aggravated assault. At sentencing, Rangel pled true to the enhancement paragraph.
Rangel was sentenced on June 23, 2004 to thirty years imprisonment for burglary of a habitation and
twenty years for aggravated assault. Rangel appeals. Because Rangel’s double jeopardy argument
has merit, we reverse and render a judgment of acquittal with respect to Count II. However, we
affirm the judgment on Count I.
Background
            On November 10, 2003, Michelle Hatzenbuehler was at home with her children and her on-and-off boyfriend, Antonio Medrano. Medrano and Hatzenbuehler awoke at two o’clock in the
morning to the sound of Raul Rangel, her other on-and-off boyfriend, banging on the door and
yelling Hatzenbuehler’s name. The yelling and banging continued for about thirty to forty-five
minutes until Rangel left. Later that morning, Rangel returned and again banged on the door and
yelled Hatzenbuehler’s name. Medrano needed to go to work, but decided to wait until Rangel left.
As Medrano was walking down the stairs with a knife, Rangel entered the apartment through a side
window. A fight quickly ensued between the two men.
            Rangel, also holding a knife, cut Medrano’s neck, face, chest, and back. Medrano’s knife
broke when it struck a wall. The men struggled over Rangel’s knife, and Medrano began to feel dizzy
from the loss of blood. Medrano bit Rangel in an attempt to get Rangel to drop the knife. Rangel and
Medrano eventually agreed to stop fighting, and Medrano went outside. He was quickly joined by
Rangel and Hatzenbuehler. Rangel began arguing with Hatzenbuehler, but he left before the police
and EMS arrived. Medrano was helicoptered to a hospital and required a two-day stay. 
            Later that day, Rangel was contacted by Officer Adrian Tijerina. Officer Tijerina testified that
he had no problems communicating with Rangel. Rangel was brought to the police station, and
Officer Jerry Hernandez took a statement from him in English. In his statement, Rangel claimed to
“black out” from anger, but he remembers struggling and a knife. Officer Hernandez did not see any
injury to Rangel except for a bite mark on his arm and some minor scratches on his head. Officer
Hernandez also testified that he had no problems communicating with Rangel.
            Rangel was offered a plea bargain of no more than fifteen years. Rangel, however, declined
to accept the deal and chose, instead, to proceed to trial. Rangel communicated easily in English with
the trial judge. 
            At trial, Rangel attempted to have evidence of a prior altercation between himself and
Medrano admitted, but the trial court sustained the State’s objection to relevance. Later,
Hatzenbuehler testified that she had given Rangel effective consent to enter the apartment whenever
he liked. However, she admitted that she had previously told the police that he did not have
permission to enter the apartment. She also testified about an earlier incident where she and Medrano
had been caught by Rangel, and the two men had had a fist fight. After the State rested, the defense
also rested, calling no witnesses. The jury found Rangel guilty of burglary of a habitation and
aggravated assault. Rangel appeals, bringing five issues.
Discussion
A.        Failure to Appoint an Interpreter for Trial
            In his first issue, Rangel argues that the trial court violated his right to confrontation under
the Sixth Amendment when it failed to appoint an interpreter. For support, Rangel relies on Garcia
v. State, 149 S.W.3d 135 (Tex. Crim. App. 2004). In Garcia, it was undisputed that the defendant
did not speak English. Id. at 142. His lawyer’s legal assistant translated for him at times; however,
the legal assistant was not instructed to translate the witnesses’ testimony at trial for the defendant,
and she testified at the motion for new trial hearing that she did not do so. Id. Indeed, the legal
assistant “had never once been called upon to sit during a trial and give an ongoing translation, and
she was not sworn in as an interpreter in this case.” Id. On appeal, the defendant argued that the lack
of translation during his trial violated the Sixth Amendment’s Confrontation Clause. Id. at 140.
According to the State, however, the defendant was prevented from bringing the issue on appeal
because he had failed to preserve it. Id. The court of criminal appeals disagreed, holding that failure
to preserve error did not prevent the defendant from bringing the issue on appeal because the right
to an interpreter must be implemented by the legal system unless expressly waived. Id. at 144.
“[W]hen a trial judge is aware that the defendant has a problem understanding the English language,
the defendant’s right to have an interpreter translate the trial proceedings into a language which the
defendant understands” must be implemented by the trial judge unless expressly waived. Id. at 145. 
In these circumstances, the judge has an independent duty to implement this right in
the absence of a knowing and voluntary waiver by the defendant. The judge may
become aware of the defendant’s language problem either by being informed of it by
one or both parties or by noticing the problem sua sponte.

Id. (emphasis in original). 
            Unlike the facts in Garcia, here, the trial court did not have any reason to believe Rangel
could not understand the English language. Rangel’s police statement was written in English and had
a factual correction that Rangel made to the statement. Before trial began, the parties discussed a
plea-bargain offer made by the State. Rangel spoke to the court in English, clearly indicating that he
understood the State’s plea-bargain offer. Rangel then told the court that he wanted to proceed to
trial. At trial, Officer Hernandez and Officer Tijerina testified that they had both communicated with
Rangel in English with no problems. 
            In his brief, Rangel argues that the trial court was informed that Rangel did not speak English
by his defense counsel. However, the portion of the record on which Rangel relies shows the
opposite:
            Defense counsel:        You don’t know Mr. Rangel’s
education, do you? 
 
            Officer Tijerina:         No, ma’am.
 
            Defense counsel:        And would you agree with me that he
speaks broken English?
 
            Officer Tijerina:         That he what, ma’am?
 
            Defense counsel:        His English is not great?
 
            Officer Tijerina:         I don’t – I never dealt with him that
extensively. Whenever I talked to him
– when I did talk to him at South
River Street, we communicated fine.

Therefore, the record does not reflect the trial court was made aware that Rangel had a problem
understanding the English language.
            We overrule Rangel’s first issue.
B.        Legal Insufficiency for Burglary of a Habitation
            In his second issue, Rangel argues that the evidence is legally insufficient to support his
conviction for burglary of a habitation. When conducting a legal sufficiency-of-the-evidence review
as prescribed by Jackson v. Virginia, 443 U.S. 307, 319 (1979), we do not weigh the evidence
tending to establish guilt against the evidence tending to establish innocence, nor do we assess the
credibility of witnesses on each side. Ex parte Elizondo, 947 S.W.2d 202, 205 (Tex. Crim. App.
1996). Instead, we view the evidence in the light most favorable to the verdict to determine whether
any rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson, 443 U.S. at 319.
            Rangel was charged with the violating section 30.02(a)(3) of the Texas Penal Code. Pursuant
to section 30.02(a)(3), a person commits burglary if, without the effective consent of the owner, the
person enters a building or habitation and commits or attempts to commit a felony, theft, or an
assault. Tex. Pen. Code Ann. § 30.02(a)(3) (Vernon Supp. 2004-05).
            Rangel argues that there is no evidence that he entered the habitation without the effective
consent of the owner, Michelle Hatzenbuehler. For support, he points to Hatzenbuehler’s testimony
at trial that Rangel “always had permission” to enter her home. However, when questioned by the
State, Hatzenbuehler admitted that at the time of the incident, she and Rangel were not seeing one
another. Indeed, she testified that on the night of the incident, Medrano, not Rangel, had spent the
night with her. According to Hatzenbuehler, when Rangel began banging on the door, she did not
want to open the door to him until Medrano left. When the State asked her about whether Rangel had
permission on the morning of the incident to come inside, Hatzenbuehler testified that she “was
going to open the door as soon as [Medrano] was out the back.” Hatzenbuehler admitted that she
gave a statement to the police the morning of the incident in which she stated, “There have been
times when [Rangel] has been allowed to stay at my house, but he didn’t have permission to come
in the house today.”
            Viewing the evidence in the light most favorable to the verdict, the jury could have
reasonably believed that Hatzenbuehler’s statement the morning of the incident was truthful and that
her testimony at trial that Rangel “always had permission” to enter her home was not truthful. 
            We overrule Rangel’s second issue.
C.        Exclusion of Prior Difficulties
            In his third issue, Rangel argues that the trial court erroneously excluded evidence of prior
difficulties between Rangel and Medrano, which would have shown that Medrano was the aggressor.
Rangel, however, has failed to properly preserve this issue for our review. At trial, defense counsel
questioned Medrano about a prior “fist fight.” The State objected, arguing that the testimony was not
relevant, and the trial court sustained the objection. To preserve a complaint that the trial court
erroneously excluded evidence, the complaining party must bring forward a record indicating the
nature of the evidence. See Tex. R. App. P. 33.1, 33.2; Tex. R. Evid. 103(a)(2); Shafer v. State, 82
S.W.3d 553, 555 (Tex. App.—San Antonio 2002, pet. ref’d). If the excluded evidence is not apparent
from the context of the record, it must be brought forward either through a timely offer of proof or
a formal bill of exception. See Tex. R. App. P. 33.1, 33.2; Tex. R. Evid. 103(a)(2); Shafer, 82
S.W.3d at 555. 
            Here, Rangel did not bring an offer of proof or a formal bill of exception. Instead, Rangel
argues that the excluded evidence is apparent from the context of the record. All that is apparent
from the context of the record is that Rangel had caught Medrano and Hatzenbuehler together in bed
before and that Rangel and Medrano had gotten into a fist fight. Indeed, if this is what Rangel claims
is apparent from the context, then any error is harmless because Hatzenbuehler testified to these
events at trial. According to Hatzenbuehler, Rangel had caught her and Medrano “in a worse
condition” before, in bed and in their “birthday suits.” Hatzenbuehler testified that on that occasion,
Rangel and Medrano got into a “fist fight” and that Rangel had had to defend himself against
Medrano. Thus, anything that was apparent from the context of the record was admitted through
Hatzenbuehler’s testimony. See Sterling v. State, 800 S.W.2d 513, 520 (Tex. Crim. App. 1990)
(holding admission of illegally obtained confession was harmless in light of second admissible
confession containing substantially same facts); see also Franks v. State, 90 S.W.3d 771, 805-06
(Tex. App.—Fort Worth 2002, no pet.) (holding that because complained of testimony was generally
cumulative of other evidence introduced in case, no harm attached).
            We overrule Rangel’s third issue.
D.        Double Jeopardy
            In his fourth issue, Rangel contends that because aggravated assault is a lesser-included
offense of burglary of a habitation, his convictions for aggravated assault and burglary of a habitation
violate his double jeopardy rights. In Count I, the indictment charged that Rangel “intentionally or
knowingly enter[ed] a habitation without the effective consent of Michelle Hatzenbuehler, the owner
thereof, and attempted to commit or committed the felony offense of aggravated assault.” In Count
II, the indictment charged that Rangel “did then and there intentionally, knowingly, or recklessly
cause bodily injury to Antonio Medrano by stabbing the said Antonio Medrano with a knife; and
[Rangel] did then and there use or exhibit a deadly weapon, to wit: a knife, during the commission
of said assault.”
            A double jeopardy claim must generally be raised in the trial court to preserve the error for
appellate review. Gonzalez v. State, 8 S.W.3d 640, 643-46 (Tex. Crim. App. 2000); Honeycutt v.
State, 82 S.W.3d 545, 547 (Tex. App.—San Antonio 2002, pet. ref’d). However, an appellant may
raise a double jeopardy claim for the first time on appeal (1) when the undisputed facts show the
double jeopardy claim violation is clearly apparent from the face of the record, and (2) when
enforcement of the usual rules of procedural default serve no legitimate state purpose. Gonzalez, 8
S.W.3d at 643; Honeycutt, 82 S.W.3d at 547. 
            “In cases where the trial court either knew or should have known of the jeopardy problem,
no purpose is served in enforcing the state procedural rule and the defendant may assert this interest
after trial.” Honeycutt, 82 S.W.3d at 547 (citations omitted). And, “where a defendant is charged in
the same indictment with two counts, and assuming one count is a lesser-included offense of the
other, the error is apparent on the face of the record.” Id. Here, Rangel was charged in the same
indictment with two counts, and he claims that one count is a lesser-included offense of the other.
Thus, we conclude that any error would be apparent on the face of the record. 
            Additionally, we hold that enforcement of the usual procedural default rules would serve no
legitimate state purpose. The appropriate remedy for any double jeopardy violation is to vacate one
of the convictions. Ball v. United States, 470 U.S. 856, 864 (1985); Landers v. State, 957 S.W.2d
558, 559 (Tex. Crim. App. 1997). Under Texas law, we are required to retain the conviction with
the “most serious punishment,” and vacate any remaining convictions that are the “same” for double
jeopardy purposes. Landers, 957 S.W.2d at 560. Here, if Rangel is successful, we would vacate his
conviction for aggravated assault and retain his conviction for burglary of a habitation. A successful
challenge would not require a retrial or even a remand to the trial court. Therefore, there are no
legitimate state interests that would be negatively impacted from allowing Rangel to raise his double
jeopardy claim for the first time in this appeal. Shaffer v. State, 477 S.W.2d 873, 875 (Tex. Crim.
App. 1971); Honeycutt, 82 S.W.3d at 547. We, therefore, hold that Rangel may raise this issue for
the first time on appeal. 
            Double jeopardy protects against (1) a second prosecution for the same offense after
acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple
punishments for the same offense. Lopez v. State, 108 S.W.3d 293, 295-96 (Tex. Crim. App. 2003).
Rangel’s claim is based on the third category.
            In a case in which the same act or transaction constitutes a violation of two distinct statutory
provisions, under the Blockburger test, we ask whether each provision requires proof of a fact which
the other does not. Mallett v. State, 65 S.W.3d 59, 68 (Tex. Crim. App. 2001). Here, as charged in
Count I, the burglary of a habitation charge required the State to prove that Rangel, without the
effective consent of the owner, entered a habitation and committed or attempted to commit the felony
offense of aggravated assault. As charged in Count II, the aggravated assault charge required the
State to prove that Rangel “did then and there intentionally, knowingly, or recklessly cause bodily
injury to Antonio Medrano with a knife, and [Rangel] did then and there use or exhibit a deadly
weapon, to-wit: a knife, during the commission of said assault.”
            Under Blockburger, burglary, as charged in this case, clearly requires proof of a fact that the
aggravated assault charge does not. However, to prove the burglary charge, the State had to
necessarily prove the elements of aggravated assault. Thus, it would seem that the aggravated assault
charge does not require proof of a fact that burglary does not. 
            One might argue that aggravated assault, as charged, does require a proof of a fact that
burglary does not because (1) under the burglary charge, the jury could have found that Rangel
committed aggravated assault by determining that Rangel caused serious bodily injury to Medrano,



and (2) under the aggravated assault charge, the jury could have determined that Rangel committed
aggravated assault by determining that Rangel used or exhibited a deadly weapon during the
commission of the assault.


 Thus, one could argue that, as charged, the offenses required proof of
a fact that the other did not: the burglary charge required proof of serious bodily injury, and the
aggravated assault charge required proof of a deadly weapon. 
            In Mitchell v. State, 137 S.W.3d 842 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d), the
First Court of Appeals was confronted with this argument in a different context. In Mitchell, the
court considered whether the trial court lacked jurisdiction to convict the defendant of aggravated
assault with a deadly weapon because it was not a lesser-included offense of burglary. Id. at 845. The
court noted that the State could have proven the commission of an aggravated assault by showing
that the appellant had assaulted the complainant and had caused her to suffer serious bodily injury
or by showing that the appellant had assaulted the complainant and had used or exhibited a deadly
weapon. Id. at 846. The court explained that “in the burglary indictment, the State was not required
to set out the elements of the felony allegedly committed and attempted by appellant after he entered
the complainant’s habitation, i.e., aggravated assault.” Id. Despite this fact, the court held that
aggravated assault was a lesser-included offense of burglary:
Under either theory of aggravated assault, the State would have had to prove
essentially the same facts, i.e., that appellant had squirted lighter fluid on the
complainant and had set her on fire. Thus, the offense to which appellant pleaded
guilty, “aggravated assault with a deadly weapon, fire,” did not “enlarge upon” the
offense charged, burglary under section 30.02(a)(3), and it was therefore a lesser
included offense.

Id. Accordingly, the court held that because aggravated assault with a deadly weapon was a lesser-included offense of burglary, the trial court had jurisdiction to convict the appellant of aggravated
assault with a deadly weapon. Id. at 846-47.
            Although the court in Mitchell was presented with a different issue than we are here, we find
Mitchell’s analysis of whether aggravated assault with a deadly weapon is a lesser-included offense
of burglary instructive. Like in Mitchell, here, to prove either charge, the State had to prove that
Rangel used a knife to stab and injure Medrano. The State could not prove serious bodily injury or
use of a deadly weapon without proving the other. If, however, the State had charged in Count I that
Rangel had committed burglary by entering a habitation with the intent to commit aggravated assault,
Rangel’s double jeopardy rights would not have been violated. The court of criminal appeals has
held that aggravated assault is not a lesser-included offense of burglary with the intent to commit
aggravated assault:
[T]he facts required to establish this charged offense [burglary] are that appellant,
without the effective consent of the owner, entered a habitation with intent to commit
aggravated assault. Under this charged offense, the State is not required to prove that
an aggravated assault occurred. Rather, the State must show only that the defendant
intended to commit such assault. Contrast an indictment charging burglary under
Section 30.02(3), which would require that the State show the commission of an
aggravated assault or acts constituting an attempt to commit aggravated assault.
While it may be true that when the State proves aggravated assault, the proof shows
an intent to commit the assault, under article 37.09(1)


, facts showing a completed
assault are not “required” to prove the intent to commit such assault. Intent to commit
requires less proof. While it certainly may be used to show that intent, it is not legally
required because intent to commit can be established by facts showing something
less than commission of the offense. . . . [W]e agree with the Court of Appeals that
because evidence showing a completed aggravated assault is not part of the facts
legally required to show burglary with intent to commit aggravated assault, under
article 37.09(1), aggravated assault is not a lesser included offense of burglary under
section 30.02(a)(1).

Jacob v. State, 892 S.W.2d 905, 909 (Tex. Crim. App. 1995) (emphasis added). As noted by the
court of criminal appeals, an indictment charging burglary under section 30.02(3), which is what we
are presented with here, would require the State to show the commission of an aggravated assault.
Because under the facts presented here the State would have to prove the offense of aggravated
assault in proving burglary under section 30.02(3), we hold that when Rangel was convicted and
sentenced on both charges, his right against double jeopardy was violated. 
            The appropriate remedy for any double jeopardy violation is to vacate one of his convictions.
Ball, 470 U.S. at 864; Landers, 957 S.W.2d at 559. We are required to retain the conviction with the
“most serious punishment,” and vacate any remaining convictions that are the “same” for double
jeopardy purposes. Landers, 957 S.W.2d at 560. We, therefore, vacate his conviction for aggravated
assault; however, we affirm his conviction for burglary of a habitation.
E.        Ineffective Assistance of Counsel
            We measure a claim of ineffective assistance of counsel against the two-prong test
established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984). See
Hernandez v. State, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986). Under this two-prong test, an
appellant must first show that his attorney’s performance was deficient, i.e., that her assistance fell
below an objective standard of reasonableness. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim.
App. 1999). Second, assuming the appellant has demonstrated deficient assistance, it is necessary
to affirmatively prove prejudice. Id. In other words, the appellant must show a reasonable probability
that, but for his attorney’s unprofessional errors, the result of the proceeding would have been
different. Id.
            Failure to make the required showing of either deficient performance or sufficient prejudice
defeats the ineffectiveness claim. Id. at 813. Absent both showings an appellate court cannot
conclude that the conviction resulted in a breakdown in the adversarial process that renders the result
unreliable. Id. An appellant bears the burden of proving by a preponderance of the evidence that
counsel was ineffective, and we look at the totality of the representation and the particular
circumstances of each in evaluating the effectiveness of counsel. Id. When reviewing a claim of
ineffective assistance of counsel, we must be highly deferential to trial counsel and avoid
“deleterious effects of hindsight.” Id. There is a strong presumption that counsel’s conduct fell
within the wide range of reasonable professional assistance. Id. 
            The assessment of whether a defendant received effective assistance of counsel must be made
according to the facts of each case. Id. Any allegation of ineffectiveness must be firmly founded in
the record, and the record must affirmatively demonstrate the alleged effectiveness. Id. Under normal
circumstances the record on direct appeal will not be sufficient to show that counsel’s representation
was so deficient and so lacking in tactical and strategic decisionmaking as to overcome the
presumption that counsel’s conduct was reasonable and professional. Bone v. State, 77 S.W.3d 828,
833 (Tex. Crim. App. 2002). Rarely will the trial record contain sufficient information to permit a
reviewing court to fairly evaluate the merits of such a serious allegation. Id.; Thompson, 9 S.W.3d
at 813. In the majority of cases, the record on direct appeal is simply undeveloped and cannot
adequately reflect the failings of trial counsel. Bone, 77 S.W.3d at 833.
            In his brief, Rangel alleges a cornucopia of errors committed by his trial court counsel. The
following allegations, however, are not firmly founded in the record and, as such, are undeveloped
and cannot reflect the failings of trial counsel:
            (1)       Counsel failed to remove for cause or peremptorily juror Venglar on
the basis he had a bias against a convicted felon;
 
            (2)       Counsel failed to preserve for review the denial of two challenges for
cause to prospective jurors Burdette and Pintirsch;
 
            (3)       Counsel failed to peremptorily remove juror Bodin after she revealed
she knew some of the law enforcement officers who would be called
to testify;
 
            (4)       Counsel failed to utilize all of her allotted peremptory challenges;
 
            (5)       Counsel failed to object to the State using four of its seven
peremptory challenges to remove prospective jurors with Hispanic
surnames;
 
            (6)       Counsel engaged in inappropriate jury argument;


 
 
            (7)       Counsel failed to secure an adverse ruling to the improper admission
of hearsay evidence;
 
            (8)       Counsel failed to object to the improper admission of hearsay
evidence;
 
            (9)       Counsel failed to perfect a bill or make a proffer on the exclusion of
evidence concerning prior difficulties between [Rangel] and
Medrano;
 
            (10)     Counsel failed to perfect a bill or make a proffer on the exclusion of
evidence concerning Medrano’s prior conviction for attempted
murder;
 
            (11)     Counsel failed to object to an extraneous offense involving
obstruction or retaliation against Michelle Hatzenbuehler;
 
            (12)     Counsel failed to object to a non responsive answer by a police
officer referring to Medrano as a victim;
 
            (13)     Counsel objected to the admission of crime scene photographs on the
basis of a nonexistent rule of evidence;



 
            (14)     Counsel failed to request a jury charge on defense of a third person
even though [Rangel]’s statement indicates that he heard a strange
voice in the apartment, he knew his child was in the apartment, and
he “tried to do for my family”;
 
            (15)     Counsel stipulated to the enhancement paragraph alleging a prior
aggravated assault conviction involving the use of a knife without any
discernable benefit to [Rangel];
 
            (16)     Counsel failed to request the preparation of a presentence
investigation report before sentencing;
 
            (17)     Counsel did not understand the State’s pretrial plea offer;



 
            (18)     Counsel did not understand the statutory limitations on court-ordered
community supervision; and
 
            (19)     The record fails to reflect counsel communicated a final pretrial plea
offer to [Rangel]. 
 
            (20)     Counsel informed the jury panel [Rangel] has a prior felony
conviction.

Because any error is not firmly founded in the record, we must presume that counsel had a trial
strategy for her actions. See Bone, 77 S.W.3d at 833; Thompson, 9 S.W.3d at 813.
            Rangel also alleges that his counsel incorrectly stated the law of self-defense during voir dire.
However, Rangel has failed to show prejudice, as the jury was correctly instructed on the law of self-defense in the jury charge. 
            Finally, Rangel complains that counsel failed “to object to the punishment phase charge
which authorized multiple punishments for the same offense in violation to [Rangel]’s double
jeopardy rights.” We have, however, remedied the double jeopardy violation by vacating one of
Rangel’s convictions. 
            We overrule Rangel’s fifth issue.
Conclusion
            Because Rangel’s right against double jeopardy was violated, we reverse and render a
judgment of acquittal on Count II. However, we affirm the trial court’s judgment on Count I.
 
Karen Angelini, Justice

PUBLISH