

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00200-CR

_____

JASON MYERS GIBSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 07-0168X

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Jason Myers Gibson was convicted by a Harrison County jury of the first-degree felony of burglary of a habitation[1] and was sentenced to ninety-nine years' imprisonment.

On his appeal, Gibson raises two issues: (1) The jury's verdict found him guilty both of burglary and of the lesser-included offense of aggravated assault. The trial court accepted the finding of guilt on the charge of burglary and ignored the verdict on aggravated assault. Gibson maintains that the trial court erred when it accepted the greater conviction rather than the lesser-included offense. (2) Gibson requested that the jury be given instructions of self-defense on both the aggravated assault charge and the burglary charge. He alleges that the trial court committed error by refusing Gibson's request and instructed the jury on self-defense only on the aggravated assault charge. We affirm Gibson's conviction and sentence.

**Facts of the Offense**

John Morrison and his wife, Kay, were together in their home with Kay's infant grandson (Gibson's son) the evening of January 19, 2007. Gibson is Kay's son. Gibson had a history of abusing methamphetamine and alcohol and was estranged from his wife, the mother of his child. Likewise, due to his substance abuse, Gibson's relationship with Kay had been on rocky ground for about seven years, a period during which Gibson had often been aggressive and violent. The preceding Christmas, Kay had "wash[ed] [her] hands" of Gibson due to one of these incidents, but

---

[1]TEX. PENAL CODE ANN. § 30.02(d) (Vernon 2003).

2

Kay maintained a close relationship to Gibson's wife, and the Morrisons frequently kept the grandchild in their home.

On at least two occasions during the week before January 19, the Morrisons had noticed things missing from their home (including a .357 magnum pistol) and suspected that Gibson had entered their home without their permission and stolen things. Unbeknownst to them, Gibson had been living in the woods behind the Morrison home. On January 19, around 6:30 or 7:00 p.m., Gibson knocked on the back door of the Morrison home; when John answered the knock and saw that it was Gibson, he told Gibson that he was unwelcome there and that Gibson's mother did not want to see him, telling him to leave. Morrison then closed the door and walked back into the other part of the house. The door upon which Gibson had knocked was the kitchen door, which was either the primary entrance or the sole entrance into the home; in order to approach it from the interior, John had to close a door leading from the utility room to the kitchen. John said that after he walked into the other part of the house, he heard loud bangs which he thought were gunshots. Remembering the missing .357 pistol, John believed the loud bangs from the area of the entry door was Gibson discharging the pistol through the door. A few days before this, the Morrisons had found their house burglarized; one missing item was John's .357 pistol. John hurried to the bedroom and got Kay's .38 pistol to defend himself, thinking that Gibson had "lost it" and was coming in to shoot John and Kay. John returned to the kitchen/living area to see Gibson with the pistol pointed directly at him, so John discharged the gun he held and shot Gibson. Almost simultaneously with the firing of one shot from

3

the pistol which he held, John said he felt his own arm get shot and go limp; he could feel blood running down his arm and he dropped the revolver with which he had armed himself. John became disoriented and sat down in a chair in the room they call the office. He had been shot in the arm.

Kay confirmed much of her husband's testimony. She said that on January 12 and 17, as well as earlier on the day of the incident which caused the filing of the charges, she and/or she and John together had returned home to discover their window blinds open and things missing.[2] On the evening of January 19, John answered a knock at the door. Kay heard John tell Gibson he was not welcome and she did not want to talk to him. Kay was explicit that John clearly told Gibson he was not welcome and that he needed to leave. John then closed the doors and walked back into the house. Kay then heard glass breaking and what sounded to her like gunshots. John told her to get the baby and get on the ground as he ran to the bedroom to get the pistol. She then saw Gibson in the kitchen holding a pistol with his arm raised. At this point, John returned from the bedroom area, armed with a gun of his own; both men shot the pistols they were holding.

Gibson testified in his own defense. Under his version of the story, when John answered Gibson's knock at the door, although Gibson could tell that Morrison was angry, John neither told Gibson to leave nor told him that he was unwelcome at the house. Gibson denied shooting the door or breaking any windows. Gibson said that he followed Morrison into the house and that when he

_____

[2]Kay said she was not in the habit of leaving the blinds open while they were gone; there was testimony that through the open blinds one could see whether anyone was approaching the house.

walked into the kitchen, he saw John pointing a pistol at Gibson's head. In what must have been extremely rapid movement, Gibson maintained that he was able to pull a .357 magnum pistol from the pocket of his cargo pants with his left hand, transfer the gun from his left hand to his right hand, and fire the gun—almost simultaneously with the discharge of the gun which John held. Gibson repeatedly claimed that Kay, his mother, had lied in her testimony about her location and the events of that evening. He claimed he had been camping in the woods behind the Morrisons' house for three days and admitted having taken things from the Morrisons' home; however, he said that his purpose in coming to their home on the evening of the 19th was to return the items he had previously borrowed while they were away.

After the exchange of gunfire, John tried to use the home's telephone to call the police, but discovered that it was not working; he later found that the telephone interface outside the house had been disconnected. Gibson said he previously removed a telephone from inside the house and plugged it into the interface box outside where he had tried to call a female friend of his who worked at a detention unit; he denied having disconnected the telephone line to the house.

Kay used her cellular telephone to call the police; all three (John, Kay, and Kay's grandson) exited the house, but Gibson remained inside. When the police arrived, Gibson would not respond to law enforcement's attempts to contact him, and they eventually shot teargas canisters into the house and apprehended Gibson.

**Two Verdicts, Trial Court Accepts the Greater Offense**

Paragraph A of the indictment charged Gibson with burglary: entering a habitation without consent and committing or attempting to commit aggravated assault, using or exhibiting a deadly weapon; Paragraph B charged Gibson with injuring the victim by shooting him, while using or exhibiting a deadly weapon. The jury signed both of the first two verdict forms, finding Gibson guilty of burglary and aggravated assault.

As a matter of housekeeping, we point out that the two pieces of conduct alleged in the indictment are more accurately termed "counts" as opposed to "paragraphs." Separate paragraphs within a single count may allege different methods of committing the same offense. TEX. CODE CRIM. PROC. ANN. art. 21.24(b) (Vernon 1989). When the State wishes to charge multiple offenses in a single indictment, it is required by statute to set out each separate offense in a separate "count." TEX. CODE CRIM. PROC. ANN. art. 21.24(a) (Vernon 1989). Since each "count" alleges a single offense, an indictment cannot authorize more convictions than there are counts. *Martinez v. State*, 225 S.W.3d 550, 554 (Tex. Crim. App. 2007). On the other hand, each count may contain as many separate paragraphs charging that offense as necessary, so long as no more than one offense is charged in any count (*see* TEX. CODE CRIM. PROC. ANN. art. 21.24(a), (b)). Thus, the term "count" is used to charge the offense itself, and a "paragraph" is a portion or subset of a count, which charges a method of committing the offense. *See Riley v. State*, 658 S.W.2d 818, 819 (Tex. App.—Fort Worth 1983, no pet.). The substance of the allegation, not the terminology used, determines its

6

character as a count or a paragraph. Here, the indictment alleged two acts of criminal conduct: burglary of a habitation and aggravated assault. It is true that aggravated assault, in the instant situation, is an element of burglary; even so, it is also a lesser-included offense of the kind of burglary as charged in this case.

The problem at trial (and the subject of the first point of error), centers on an inartfully drafted jury charge. The application paragraph of the jury charge read as follows:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 19th day of January, 2007 in Harrison County, Texas, the defendant, Jason Myers Gibson, did then and there, intentionally or knowingly enter a habitation, without the effective consent of John Morrison, the owner thereof, and attempted to commit or committed the felony offense of aggravated assault and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm during the commission of said offense, then you will find the defendant guilty of burglary as charged in Paragraph A of the indictment; or if you find from the evidence beyond a reasonable doubt that on or about the 19th day of January, 2007, in Harrison County, Texas, the defendant, Jason Myers Gibson, did then and there intentionally, knowingly, or recklessly cause bodily injury to John Morrison by shooting him with a firearm, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault, then you will find the defendant guilty of aggravated assault as charged in Paragraph B of the indictment.

The charge fails to specifically instruct the jury to consider the charge of aggravated assault (charged in Paragraph B) only if they have a reasonable doubt as to the charge of burglary (charged in Paragraph A). It would have been preferable to instruct the jury that should the jurors entertain a reasonable doubt as to whether Gibson was guilty of burglary as charged, they should find him not guilty, and consider whether he was guilty of the lesser offense of aggravated assault. *See* 3 TEXAS CRIMINAL PRACTICE GUIDE § 73D.103 (2008).

7

In the case at bar, the trial court's charge simply joined the two allegations (burglary and aggravated assault) with the conjunction "or," and did not predicate the jury's consideration of the lesser offense upon first having a reasonable doubt that Gibson had committed the primary charge of burglary. However, this imprecision in the charge did not affect the outcome of the trial. The jury found, beyond a reasonable doubt, that Gibson was guilty of both burglary and aggravated assault. The finding on aggravated assault was a necessary predicate to the jury finding that Gibson committed burglary as charged in the indictment.

After the jury's verdicts were read, a conference at the bench was held; this conference was not transcribed. Outside the presence of the jury, the discussion continued later. The trial court stated,

> The Court has reviewed case law and I am of the opinion that the jury having found the defendant guilty beyond a reasonable doubt of burglary and also guilty beyond a reasonable doubt of aggravated assault, that I will ignore the second as being a lesser included. The State charged the defendant with burglary to commit rather than with intent. It is clearly a lesser included offense and the case law is clear that the court can ignore the second since - - you have to find him guilty of the second in order to find him guilty of the first anyway.

The State cites *Rangel v. State*, 179 S.W.3d 64, 67 (Tex. App.—San Antonio 2005, pet. ref'd), a case which appears to squarely address this issue. Rangel was convicted in Count I for burglary of a habitation and in Count II for aggravated assault; the San Antonio court modified the judgment to acquit Rangel of the Count II charge on double jeopardy grounds. In that case, Count I of the indictment charged that Rangel "intentionally or knowingly enter[ed] a habitation

8

without the effective consent of . . . the owner thereof, and attempted to commit or committed the felony offense of aggravated assault." *Id*. at 70. In Count II, the indictment charged that Rangel "did then and there intentionally, knowingly, or recklessly cause bodily injury to [victim] by stabbing the said [victim] with a knife; and [Rangel] did then and there use or exhibit a deadly weapon, to wit: a knife, during the commission of said assault." *Id.* This is almost identical to the language employed in the indictment in Gibson's case. The *Rangel* court concluded, "The appropriate remedy for any double jeopardy violation is to vacate one of the convictions." *Id.* (citing *Ball v. United States*, 470 U.S. 856, 864 (1985); *Landers v. State*, 957 S.W.2d 558, 559 (Tex. Crim. App. 1997)).[3] When a defendant is subjected to multiple punishments for the same conduct, the remedy is to affirm the conviction for the most serious offense and vacate any other convictions. *Bigon v. State*, No. PD-1769-06, 2008 Tex. Crim. App. LEXIS 1, at *30 (Tex. Crim. App. Jan. 16, 2008) (citing *Cavazos*, 203 S.W.3d 333; *Landers*, 957 S.W.2d 558).

In *Ochoa*, the San Antonio court found the trial court should have instructed the jury on the law of lesser-included offenses; as a result, the jury returned guilty verdicts both for aggravated sexual assault of a child and for indecency with a child. Reasoning that since the State proved all the elements of aggravated sexual assault of a child, the appellate court found that the State had also necessarily proved the elements of indecency with a child: "if the trial court had properly instructed

---

[3]*But see Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006) (overruling *Landers* to extent it held factors such as degree of felony, range of punishment, and parole eligibility rules should be considered when determining most serious offense).

the jury on lesser included offenses, the only change to the conviction would have been the absence of the conviction for indecency with a child. For these reasons, we find that the jury found Appellant guilty of the greater offense of aggravated sexual assault and not of the lesser offense of indecency with a child." *Ochoa v. State*, 955 S.W.2d 389, 393 (Tex. App.—San Antonio 1997), *aff'd*, 982 S.W.2d 904 (Tex. Crim. App. 1998). In the present case, the trial court's stated reasoning ("you have to find him guilty of the second in order to find him guilty of the first anyway") is similar to that in *Ochoa*. We find that reasoning to be sound: a finding of guilt for burglary was predicated upon a finding Gibson either committed or attempted to commit aggravated assault, that being an element of the burglary offense with which he was charged.

Accordingly, the trial court was correct in accepting the jury's verdict for burglary and ignoring or dismissing its conviction for aggravated assault. We overrule Gibson's first point of error.[4]

---

[4]To the extent that Gibson complains (particularly at oral argument) of the possibility of a nonunanimous verdict, we find Gibson did not preserve this point for appellate review. More importantly, we find very little likelihood of a nonunanimous verdict. The jury was required by the charge to make a decision about aggravated assault as a predicate to a conviction of the burglary charge. Gibson did not ask the jury be polled. After reading the two verdicts aloud, the trial court asked, "Is there anyone that disagrees with the verdict as I have read it?" The reporter's record indicates "(No audible response)," and the trial court stated, "All the heads are shaking, no." The charge does include accurate language requiring unanimity and instructing the jury that if it found Gibson guilty beyond a reasonable doubt of one or the other, they must resolve that conflict in Gibson's favor and find him guilty only of the lesser offense of aggravated assault.

**Self-Defense Instruction Limited to Aggravated Assault Allegation**

Gibson's second point of error complains about the trial court only instructing the jury on the law of self-defense in regard to the aggravated assault charge. Gibson had asked the defensive instruction be made applicable to the burglary charge too, but the trial court declined.

If evidence from any source, be it strong, weak, unimpeached, or contradicted, raises a defensive theory, it must be included in the court's charge. *Hayes v. State*, 728 S.W.2d 804, 809 (Tex. Crim. App. 1987). In his testimony, Gibson told the jury that he had come to the Morrison home to return items which he had taken, including the .357 pistol which he said he was carrying in his left front pocket. It is hard to reconcile why, if the trial court found that Gibson was entitled to an instruction on self-defense regarding aggravated assault, he would not be likewise entitled to it on the burglary charge. Absent an affirmative jury finding that Gibson committed or attempted to commit aggravated assault upon John, Gibson could only have been found guilty of, at most, criminal trespass. *See* TEX. PENAL CODE ANN. § 30.05 (Vernon Supp. 2007).

Gibson made a timely objection to the trial court's limitation of the self-defense instruction to the assault charge. A trial court must charge the jury fully and affirmatively on the law applicable to every issue raised by the evidence. TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007); *Taylor v. State*, 856 S.W.2d 459, 470 (Tex. App.—Houston [1st Dist.] 1993), *aff'd*, 885 S.W.2d 154 (Tex. Crim. App. 1994). If evidence presented at trial raises an issue and a jury charge is requested on that issue, then a charge on that issue must be given. *Taylor*, 856 S.W.2d at 470–71. Reversal

is required for an error that has been properly preserved only if "some harm" to the accused results from the error or if the error is "calculated to injure the rights of defendant." *Id.* at 474; *see* TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *Booker v. State*, 712 S.W.2d 853, 857 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd). In assessing harm, the reviewing court considers the entire jury charge, the state of the evidence, the arguments of counsel, and other relevant information as found in the record as a whole. *Almanza*, 686 S.W.2d at 171; *Reynolds v. State*, 227 S.W.3d 355, 361 (Tex. App.—Texarkana 2007, no pet.). When one considers possible harm to Gibson due to the failure to include a self-defense instruction concerning the burglary charge, one observes that it is highly unlikely that the jury would have found that Gibson was not acting in self-defense with regard to the assault charge, yet would have found that he did act in self-defense on the same assault that was an element of the burglary charge.

We find it was error for the trial court to limit the jury's consideration of self-defense to the charge of aggravated assault; however, we find this error to have been a harmless one. Because the jury issued a verdict specifically finding Gibson guilty beyond a reasonable doubt of aggravated assault, it clearly rejected his claim that he acted in self-defense. We find nothing in the record to suggest the jury would have made a different finding had it been instructed to consider self-defense as it deliberated the charge of burglary. We overrule this point of error.

12

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     June 18, 2008
Date Decided:       July 2, 2008

Do Not Publish

13