NO. 07-09-0070-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 23, 2009
_____

WILLIE BERNARD BUTLER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 57,067-B; HONORABLE JOHN BOARD, JUDGE
_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Willie Bernard Butler, was convicted of burglary of a habitation by committing or attempting to commit assault.[1] After finding both enhancement paragraphs of the indictment true, the jury sentenced appellant to confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for a period of 60 years.

_____

[1]See TEX. PENAL CODE ANN. § 30.02(a)(3) (Vernon 2003).

Through one issue, appellant contends that the evidence is both legally and factually insufficient.[2]  We affirm.

## Factual Background

Terry Hearn owned a residence located at 1917 Marrs in Amarillo, Texas.  Becky Baker resided, at times, at the residence.  On November 23, 2008, Baker arrived at Hearn's residence around 10:00 or 11:00 in the morning.  Baker had been at the residence approximately 2 to 3 hours when appellant arrived.  Appellant knocked on the front door and Hearn let him in.  Hearn testified that appellant had been at his house before and had been given consent to enter.  After appellant entered, he asked if Baker was present and Hearn told him "No."  Hearn testified that Baker had told him to say she was not present if anyone came to the house asking about her.  Baker denied this statement in her testimony.  Appellant, not believing Hearn and based upon his prior knowledge, proceeded to the bedroom where Baker stayed.  Hearn testified that he heard a lot of yelling and screaming coming from the bedroom and, a short time later, appellant and Baker came through the living room going to the front door.  Appellant went through the door and Baker shut the door behind him.  Hearn and Baker both testified that, when appellant went through the front door, Baker shut and locked the door behind him.  Baker told Hearn to call 911 and he did so.  Appellant began beating on the front door while shouting to gain reentry.  Both Hearn and Baker testified they did not either answer appellant nor unlock

[2]Appellant's issue as stated in his brief appears to contend only a factually insufficient claim, however, the brief then reviews the evidence for both legally and factually insufficiency.  Therefore, we address both claims.

and open the front door. Appellant then kicked the front door open and came inside. Baker attempted to flee through the kitchen but the back door was locked.

Appellant went into the kitchen after Baker. Baker testified that it was then that appellant began punching and kicking her while she was on the floor. Hearn testified he went into the kitchen and saw appellant kick Baker three times. Hearn then yelled at appellant to stop. Appellant stopped kicking Baker and pulled her upright. Appellant then took Baker out to a car and they left the scene.

After appellant left the scene, the police arrived in response to the 911 call made by Hearn. Officer Weldon testified that he observed the condition of the front door and had another officer take pictures of it. These photos of the front door were admitted into evidence at the trial. Weldon took a statement from Hearn and viewed the kitchen area for evidence of a struggle. Weldon got the information about appellant's vehicle and a description of appellant from Hearn.

Detective Anderson of the Amarillo Police Department testified that he eventually made contact with Baker by telephone. He described his conversation with her as unusual, inasmuch as she would only answer yes or no to questions that called for a more detailed explanation. Anderson testified that based upon his experience in questioning witnesses he concluded that Baker was in the presence of appellant while Anderson was talking to her. Baker came to the police department the next day and Anderson interviewed her regarding the incident. While Baker was at the police department, Anderson took pictures of the bruises that appeared behind her ear and on her back and side. These were,

according to Baker, the bruises caused by appellant's attack. These pictures were admitted into evidence at appellant's trial.

During the trial, Baker testified about the events leading up to the assault. She admitted that she had spent the night with appellant the night before the assault. Further, she admitted having stolen $50 from appellant when she left appellant's apartment. On the day of the assault, Baker returned to Hearn's residence but denied telling him to tell anyone who came looking for her that she was not there. In describing what occurred when she came out of the bedroom with appellant, she indicated that she locked the door when appellant went out and leaned against it. This was in conflict with Hearn's testimony that no one was trying to hold the door shut. She further testified that appellant had hit her with his fists and kicked her while she was on the floor in the kitchen. She admitted that after she left with appellant she did not make any attempt to escape; rather she went back to appellant's apartment and went to sleep. Baker testified that she did not have access to a phone while at appellant's apartment, except for appellant's cell phone. According to Baker, when she was on the phone appellant was present and had advised her not to say anything about the assault.

Appellant did not testify, however, there had been a previous trial that ended in a mistrial. During the State's case-in-chief, the State presented some of the testimony appellant had given in the former trial. This testimony reflected that appellant had stated that, when he started to leave Hearn's residence with Baker, she slammed the door and put her body up against it but did not lock it. At the former trial, appellant eventually admitted that he pushed his way in and Hearn never let him in.

4

Appellant offered defensive testimony through his roommate, Anita Neff. Neff testified that she is the one who drove Baker back to Hearn's residence after Baker had spent the night with appellant. When Neff returned home, appellant had awoke to find the money missing. Appellant asked where Baker was and Neff told him that she had taken Baker to "Baker's"[3] house. Appellant left in Neff's vehicle and returned after a period of time with Baker. Baker never complained about any injuries and Neff never heard appellant threaten Baker while she was on the telephone.

The jury was charged as to the offense of burglary of a habitation by commission of assault or attempting to commit assault. The jury returned a guilty verdict and, after the punishment hearing, assessed appellant's punishment at confinement for 60 years in ID-TDCJ. The trial court entered its judgment, based upon the jury's verdict and sentence and appellant perfected his appeal.

Standard of Review

Because we view appellant's brief to ultimately complain of both the legal and factual sufficiency of the evidence, we will address both standards of review. Therefore, we are required to conduct an analysis of the legal sufficiency of the evidence first and then, only if we find the evidence to be legally sufficient, do we analyze the factual sufficiency of the evidence. See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).

---

[3]Although the testimony was clear that the house in question belonged to Hearn, Neff referred to it as "Baker's" house.

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). We measure the legal sufficiency of the evidence against a hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. See id. at 417. As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. See id. Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). The Court of Criminal Appeals has

recently declared that when reviewing the evidence for factual sufficiency, the reviewing court should measure the evidence in a neutral manner "against a hypothetically correct" jury charge. Vega v. State, 267 S.W.3d 912, 915 (Tex.Crim.App.), (citing Wooley v. State, 273 S.W.3d 260, 268 (Tex.Crim.App. 2008)).

## Offense Charged

To prove burglary, as charged in the indictment, the State must prove: 1) appellant, 2) without the effective consent of the owner, 3) entered a habitation, and 4) committed or attempted to commit the felony offense of assault. See TEX. PENAL CODE ANN. § 30.02(a)(3) (Vernon 2003).[4] Further, a person commits an assault if they intentionally, knowingly or recklessly cause bodily injury to another. See § 22.01. Bodily injury is defined as physical pain, illness, or any impairment of physical condition. See § 1.07(8).

## Legal Sufficiency

The evidence at trial consisted of the testimony of Hearn to the effect that appellant first came to the door of his house and knocked. Upon gaining entry, appellant asked about whether or not Baker was present. Hearn testified that he told appellant Baker was not present. Not believing Hearn, appellant proceeded to the bedroom he knew Baker generally occupied. A loud argument resulted and appellant then reappeared in the living room with Baker. Appellant went outside the front door whereupon Baker shut the door and, according to the testimony, locked it. Simultaneously, Baker instructed Hearn to call

---

[4] Further reference to the Texas Penal Code shall be by reference to "sec. ___" or "§ ___."

911, which he did. The testimony conflicts as to whether or not Baker attempted to assist the locking mechanism by leaning against the door. Appellant finding himself outside alone began to beat on the door demanding that he be allowed to reenter the residence. In the next instant, the door face is shattered and appellant comes in the residence. The pictures introduced to the jury showed that parts of the door face had splintered and the lock became disengaged. Baker fled to the kitchen with appellant in hot pursuit. Hearn then heard more shouting and yelling and observed appellant kick Baker two or three times.

Based on the fact that he had been previously invited into the house, before the door was locked, appellant posits that the State has failed to prove his entry was without the effective consent of the owner. Appellant's contention is that, because Hearn gave initial permission to enter the residence, appellant was warranted in thinking he still had permission. However, to support this theory, appellant is unable to cite the court to a single case. We are unable to accept appellant's position because Hearn testified at trial that he did not give appellant permission to enter the residence after the door was locked. See Rangel v. State, 179 S.W.3d 64, 69 (Tex.App.–San Antonio 2005, pet. ref'd) (accused had previously had access to the residence, however, at the time in question the owner did not answer the knocking at the door and testified accused was not given permission to enter, was sufficient evidence of lack of consent). When a jury hears that a door was locked and permission to enter was not given but appellant breaks the door open anyway, we cannot say that jury acted irrationally in finding appellant guilty beyond a reasonable doubt. Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Accordingly, to the extent

8

appellant's brief could be read to contest the legal sufficiency of the evidence, the issue is overruled.

Factual Sufficiency

When we view the evidence in a neutral light, as we must do in a factual sufficiency review, we are still left with the proposition that appellant broke through a locked door to gain admission.  Whereas appellant may have had permission to enter before, he did not receive permission to enter the second time.  There may in fact be situations where once you have permission to enter a residence, reentry might be assumed without the necessity of gaining permission a second time.  However, when the door is locked and you are banging on it with your fist yet you receive no response from the occupants, we fail to understand the rationale to assume permission.  Appellant contends the record supports his purported assumption that permission to enter had been given and contends this should undermine this court's confidence in the jury's verdict.  See Sims, 99 S.W.3d at 603.  To this end, appellant points to the fact that it was not Hearn that locked the door. Further, appellant contends that Hearn never told him "you don't come in my house." Additionally, appellant points to the fact Baker testified that he had stayed over at Hearn's residence twice a week for at least a month.  This, in appellant's view, is tantamount to consent to enter.  The jury heard this testimony and the testimony of Hearn that he did not give appellant permission to enter the house once the door was locked.  It was up to that jury to resolve these matters after listening to the testimony.  See Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2006)(we defer to the jury's determination of the weight to be given contradictory evidence, particularly so when that determination turns on the

9

credibility and demeanor of the witnesses).  The issue of consent was determined by the jury and we cannot say that the jury's determination was not rationally justified, after consideration of all of the evidence in a neutral light.  <u>Watson</u>, 204 S.W.3d 415. Appellant's factual sufficiency issue is overruled.

Conclusion

Having overruled appellant's issues, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice


Do not publish.