# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00410-CR

**Juan Manuel Alacan, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 71993, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Juan Manuel Alacan guilty of burglary of a habitation, and the court assessed sentence at ten years in prison. Appellant contends that the evidence is insufficient to support his conviction because it does not show that he entered the home without the owner's effective consent and does not show that he had the requisite mental state to assault anyone when he entered the home. We will affirm the conviction.

## BACKGROUND

Killeen Police Department Officer Brett Boynton was dispatched to a home from which a woman had called 911 and reported that someone was trying to break in. The dispatcher reported that the woman then screamed repeatedly and the phone disconnected. When Boynton arrived, a woman ran toward him from the address of the call screaming and crying hysterically that "[h]e's going to kill him." Boynton drew his weapon and approached the house. He found appellant inside, angry and yelling. Boynton said that appellant told the woman in Spanish to downplay the

situation. Boynton testified that appellant was not holding a weapon, but on the floor underneath furniture there was a knife three to four feet away from him and another eight to ten feet away. Boynton said that the knives appeared to have been removed from a wood block in the kitchen. Boynton said that in the master bedroom he found a window open and a door frame to a bathroom broken. He testified that, in a room on the back of the house, he found another open window covered by miniblinds that were crumpled and dislodged from their normal position as if by someone forcing their way through the window. He also noted that a tire on the woman's car had been punctured, apparently by a knife. Photos of the scene and the victim were admitted into evidence.

The remainder of this summary of events is derived from the testimony of the victim, Ruth Ocana. Appellant and Ocana had a child together and dated for three years before separating in May 2013. Ocana moved with the child into her mother's house. When Ocana's mother took the child to Puerto Rico in September or October 2013, Ocana and appellant resumed their relationship. Appellant frequently stayed overnight and kept clothes and personal belongings at the house. His presence was routine and he had her permission to come by without advance notice. Appellant nevertheless sometimes called ahead to see if her sister was with her because her family did not like him very much. He would not come in if her sister was there. Appellant spent the night of October 21, 2013 with Ocana in her mother's house.

On the afternoon of October 22, 2013, Ocana left work about 4 p.m. She had missed two calls from appellant because she could not answer while at work. She called him back and either left a message or spoke with him and, at some point, told him that she had friends over. A male coworker came to her house to talk about something, but they were interrupted when

2

appellant called her from outside the house. Ocana told appellant that she "couldn't talk to him right now." He told her that if she would not see him then, she would never see him again. Ocana testified that she replied, "Okay." Appellant then started banging on the locked front door for her to open it. She told her coworker to hide because she feared appellant would be angry to find her alone with another man even though appellant was living with his girlfriend. She told the coworker that appellant was "a psycho." She called 911 and reported that someone was trying to break into her house. Meanwhile, appellant crawled through a window that he had left unlocked the night before. Ocana testified that he sometimes came in through her bedroom window.

Ocana screamed when she saw appellant, and he knocked the phone from her hand and began aggressively searching for her visitor. When appellant found a door he could not open, he returned to the kitchen and got two knives. Ocana tried to stop him, but he pushed her into a wall, grabbed her arms hard enough to bruise her, and slapped her face causing pain and swelling. He kicked open a bathroom door. Ocana ran outside and appellant pursued her with a knife, telling her to get back inside or he would hurt and kill her. He slashed a tire on her car. She feared appellant would try to kill her coworker, but the coworker had fled through a window in the master bedroom.

Ocana later said that she had "overexaggerated" her reaction when the police arrived. She did not mind appellant coming over, but agreed that she had told appellant not to come over that day, did not open the door when he nevertheless arrived, and did not want him to come into the house at that time. Appellant did not pay rent, electricity, or water bills and did not have a key to the house.

**DISCUSSION**

Appellant contends that the evidence is insufficient to show that he entered the home without the owner's effective consent or that he had the requisite mental state to commit assault when he entered the home.

In reviewing the sufficiency of the evidence to support a conviction, we determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In making this determination, we consider all evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Allen v. State*, 249 S.W.3d 680, 688-89 (Tex. App.—Austin 2008, no pet.). We view this evidence in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778. The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. We presume that the jury resolved any conflicting inferences and issues of credibility in favor of the judgment. *Clayton*, 235 S.W.3d at 778.

A person commits the offense of burglary as charged in this case if, "without the effective consent of the owner, the person . . . enters a building or habitation and commits or attempts to commit a felony, theft, or an assault." Tex. Penal Code § 30.02. Consent is assent in fact, whether express or apparent. *Id.* § 1.07(a)(11). Effective consent includes consent by a person legally authorized to act for the owner; consent is not effective if induced by force, threat, or fraud. *Id.* § 1.07(a)(19). An owner is a person who has title, possession, or a greater right to possession of the property than another. *Id.* § 1.07(a)(35).

Appellant contends that his recent history of staying with Ocana and the presence of his property in the house show that he had her effective consent to enter the house. He notes that he had entered through Ocana's bedroom window several times with her permission. He argues that she did not expressly revoke her consent to him entering the home through the window.

We conclude that the evidence is sufficient to support the jury's verdict that appellant entered Ocana's residence without her consent. The San Antonio court held that a man who ordinarily had consent to enter his girlfriend's home committed burglary by entering without her consent and assaulting her second boyfriend. *Rangel v. State*, 179 S.W.3d 64, 69 (Tex. App.—San Antonio 2005, pet. ref'd). The woman testified that, because her second boyfriend was in her home, she did not want Rangel to enter at that time. *Id*. at 66. She said that, although Rangel had previously had permission to enter her home, he did not have permission to enter at the time of the incident. *Id*. at 69. The court held that when he banged on the door and was denied entry, then entered through the window, the evidence was sufficient to show non-consensual entry. *Id.* The essential facts here are similar. Though appellant had entered Ocana's home with her permission previously, she testified that on the day of the incident she told him over the telephone that she did not have time to see him and later told him through the door that she was fine with never seeing him again. The front door was locked and she did not open it in response to his banging on it. She called 911 when he persisted and reported that someone was trying to break into her house and screamed when she saw he had entered the house. His response was to grab her phone and disconnect the call. This evidence is legally sufficient to support the jury's finding that appellant did not have Ocana's consent to enter the home and that appellant was aware that whatever permission to enter he previously enjoyed was at least temporarily suspended.

Appellant contends that the evidence does not support a finding that he entered the house intending to commit a felony, theft, or an assault. That contention is directed to a conviction under Texas Penal Code section 30.02(a)(1). Appellant was convicted under a jury charge drawn from a different subsection. *See* Tex. Penal Code § 30.02(a)(3). The jury found that he intentionally or knowingly entered a habitation without the effective consent of the owner and "attempted to commit or committed an assault against Ocana." A person commits an assault when he intentionally, knowingly, or recklessly causes bodily injury to another. *Id.* § 22.01(a)(1). Bodily injury includes physical pain, illness, or any impairment of physical condition. *Id.* § 1.07(a)(8). This definition includes relatively minor physical contact if it is more than offensive touching, and direct evidence that a victim suffered pain is sufficient to show bodily injury. *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009). Police took photos of bruises and swelling on Ocana's body, and she testified that appellant inflicted those injuries. Ocana testified that appellant hurt her when he slapped her in the face, grabbed her, and shoved her into a wall. We conclude that the evidence is legally sufficient to support the conviction under Penal Code section 30.02(a)(3).

## CONCLUSION

We affirm the judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Affirmed

Filed: January 21, 2016

Do Not Publish

6